# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JOSEPH SATTERFIELD,**
**Claimant Below, Petitioner**

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-323**          (JCN: 2023010236)

**WALMART ASSOCIATES, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Joseph Satterfield appeals the June 17, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Walmart Associates, Inc., ("Walmart") filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in affirming the claim administrator's order granting temporary total disability ("TTD") benefits only from October 31, 2022, through November 6, 2022.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 31, 2022, while employed by Walmart, Mr. Satterfield injured his left shoulder while lifting an item. Mr. Satterfield filed a workers' compensation claim for a left shoulder injury. Vijay R. Randive, M.D., treated Mr. Satterfield for his injury on October 31, 2022, and diagnosed an acute sprain of the left shoulder; Dr. Randive took Mr. Satterfield off work for the next two days. On November 7, 2022, Mr. Satterfield saw Walter C. Boardwine, D.O., for his left shoulder. Dr. Boardwine noted that Mr. Satterfield suffered an injury to his shoulder the previous week. Dr. Boardwine commented that Mr. Satterfield previously underwent a labral repair in September of 2021 and noted that he suffered a reinjury while lifting at work. Dr. Boardwine assessed a sprain of the left shoulder associated with lifting, chronic and acute subluxation of the left shoulder joint, and chronic bicipital tendinitis in the left shoulder. Although Dr. Boardwine ordered physical therapy, he released Mr. Satterfield to return to work at light duty.

---

[1] Mr. Satterfield is self-represented. Walmart is represented by H. Dill Battle III, Esq.

1

On December 5, 2022, Dr. Boardwine examined Mr. Satterfield, who complained of sharp pain in his left shoulder. At this visit, Dr. Boardwine diagnosed chronic bicipital tendinitis of the left shoulder and chronic subluxation of left shoulder joint. An MRI was ordered to determine if Mr. Satterfield retore his prior labral repair, although Dr. Boardwine opined that the problem could be in the bicipital groove region. The MRI, performed on December 8, 2022, revealed a superior labral tear and signal abnormalities in the glenoid that were possibly postoperative changes. The biceps tendon and the rotator cuff were unremarkable.

On December 12, 2022, Dr. Boardwine reviewed the MRI and said that some superior labral issues noted in the MRI had been seen at the time Mr. Satterfield had surgery and it was believed that there was a congenital anomaly at that time. Dr. Boardwine noted continued biceps tendinitis and possible instability or chronic tearing at the groove. Further, Dr. Boardwine mentioned that a diagnostic arthroscopy could be used to make the diagnosis. After an eight-month gap in treatment, on August 14, 2023, Dr. Boardwine saw Mr. Satterfield, who explained that he had been contesting a workers' compensation decision, but he continued to have pain in the biceps tendon. Dr. Boardwine continued to assess left shoulder chronic bicipital tendinitis, but he also added that there was probably a biceps anchor problem or instability of the tendon and that such conditions are usually diagnosed with arthroscopy. Importantly, Mr. Satterfield reported that he had been working modified duty with a lifting limit of no more than five pounds, and no overhead use or climbing and that he did not feel that he could work full duty. Dr. Boardwine continued the work restrictions.

On November 7, 2023, the Board issued its order reversing the claim administrator's order and holding the claim compensable for a left shoulder sprain/strain. The Board relied on reports by Dr. Randive, dated October 31, 2022, and Dr. Boardwine dated November 7, 2022, as the basis for its ruling that Mr. Satterfield had sustained a sprain/strain injury to his left shoulder as the result of lifting at work. In addition to holding the claim compensable for a left shoulder sprain/strain, the Board remanded the claim to the claim administrator, directing it to issue a protestable order addressing Mr. Satterfield's entitlement to TTD benefits.

On November 14, 2023, the claim administrator issued a notice acknowledging that the Board had reversed its order dated December 23, 2022, and held the claim compensable for a left shoulder strain. Also on November 14, 2023, the claim administrator issued an order in which it granted TTD benefits from October 31, 2022, through November 6, 2022, based on Dr. Boardwine's findings. The order explained that Dr. Boardwine certified that Mr. Satterfield could return to work at light duty effective November 7, 2022. Mr. Satterfield protested this order to the Board.

Dr. Boardwine next saw Mr. Satterfield on January 9, 2024. Mr. Satterfield reported that his claim had been approved and that he had not worked since Dr. Boardwine saw him

"last year." Dr. Boardwine's impression was that Mr. Satterfield had either a SLAP lesion, instability of the biceps in the groove, or chronic tendinitis of the biceps. Although possible surgery was mentioned, Dr. Boardwine planned to request approval for physical therapy. Dr. Boardwine did not comment on Mr. Satterfield's work duty status or restrictions.

On January 26, 2024, Patty Yokum, Walmart's personnel lead, wrote to Mr. Satterfield advising him to sign a temporary alternative duty assignment ("TAD") form and bring it with him when he returned to work on January 26, 2024. A Walmart manager completed a portion of the TAD form and indicated that on November 7, 2022, Dr. Boardwine released Mr. Satterfield to light duty work with restrictions on overhead lifting, climbing, and use of ladders. Walmart assigned Mr. Satterfield to a position answering phones and he was to report to work on January 29, 2024. Mr. Satterfield signed the form indicating his acceptance of the TAD position.

By order dated June 17, 2024, the Board affirmed the claim administrator's order granting TTD benefits from October 31, 2022, through November 6, 2022, finding that Mr. Satterfield failed to show that he was entitled to additional TTD benefits as a result of his compensable injury. The Board found that the medical evidence revealed that Mr. Satterfield was released to light duty work on November 7, 2022, and the Board found no medical evidence that he was taken off work again after November 7, 2022. The Board emphasized that Mr. Satterfield said that he worked forty hours per week until July 14, 2023, when he returned from a vacation and found that Mr. Satterfield would not be entitled to any TTD during the time he worked light duty. The Board also addressed Mr. Satterfield's argument that he should be compensated for lost wages from August 21, 2023, through January 24, 2024, when Walmart either reduced his work hours or took him off work altogether. The Board found no evidence of record to corroborate Mr. Satterfield's assertion that his hours were cut or that he was taken off work as a result of his left shoulder sprain/strain. The Board found no evidence indicating that a doctor took him off work during that time. Mr. Satterfield appeals this order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Satterfield argues that he is due additional TTD, primarily because Walmart reduced his work hours beginning in late June of 2023. Although the timeframe is unclear, Mr. Satterfield also alleges that Walmart sent him home because of the injury. Mr. Satterfield notes that he returned to work on January 29, 2024, when he was assigned to alternative duty answering phones, but his hours were reduced again in March of 2024. Mr. Satterfield asserts that he did everything he was asked to do, although he acknowledges that he should have submitted additional evidence in his appeal to the Board, and he requested leave to file a supplemental appendix with this Court, which was refused by order dated September 20, 2024. Finally, Mr. Satterfield also asserts that his injury is more than a shoulder sprain and that he should be authorized to receive physical therapy and surgery if needed.

After review, we conclude that the Board was not clearly wrong in finding that Mr. Satterfield failed to prove entitlement to additional TTD benefits in the claim. As noted by the Board, West Virginia Code § 23-4-1c (2009) provides for payment of TTD benefits during the healing or recovery period after an injury. We also note that under West Virginia Code § 23-4-1c(c) entitlement to TTD benefits is contingent upon the receipt of medical evidence justifying payment of the benefits. Further, we note that pursuant to West Virginia Code § 23-4-7a(e) (2005), TTD benefits are properly suspended after a claimant reaches his or her maximum degree of medical improvement, is released to return to work, or actually returns to work.[2] As the Board found, and as Mr. Satterfield acknowledges, he worked forty hours per week on light duty from November 7, 2022, until he went on vacation from June 19, 2023, to July 14, 2023. Thus, as the Board found, Mr. Satterfield

---

[2] W. Va. Code § 23-4-7a(e) provides, in pertinent part:

> In all cases, a finding by the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, that the claimant has reached his or her maximum degree of improvement terminates the claimant's entitlement to temporary total disability benefits regardless of whether the claimant has been released to return to work. Under no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the claimant is released to return to work or beyond the date he or she actually returns to work.

4

was not entitled to any TTD for the time he actually worked. Further, as the Board found, there is no evidence of record showing that Mr. Satterfield was taken off work by a doctor in July 2023 due to his compensable shoulder sprain/strain. To the contrary, as the Board noted, in August of 2023, Dr. Boardwine continued Mr. Satterfield's work restrictions. We find no error in the Board's finding that there is no medical evidence showing that any loss of work after July of 2023 was related to Mr. Satterfield's compensable injury.

Mr. Satterfield's assertions that his injury is more than a shoulder sprain and that he should be authorized to receive physical therapy and possibly surgery are not proper issues before this court as neither the underlying claim administrator's order nor the Board's order addresses the compensable conditions in the claim or requests for treatment. Further, it is unclear whether the claim administrator has ruled on Dr. Boardwine's treatment requests, and there is no evidence that Dr. Boardwine requested a diagnosis update to add additional conditions to the claim.

Accordingly, we affirm the Board's June 17, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

5